# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

R. PEACHER, )
 )
 Plaintiff, )
v. ) 1:11-cv-601-SEB-DKL
 )
ALAN FINNAN and KEITH BUTTS, )
 )
 Defendants. )

## Entry Granting Defendants' Second Motion for Summary Judgment and Directing Entry of Final Judgment

For the reasons explained in this Entry, the defendants' second motion for summary judgment [dkt. 144] is **granted.**

### I. Background

The plaintiff in this 42 U.S.C. § 1983 civil rights action is Robert Peacher ("Mr. Peacher"), an inmate who at all relevant times has been in custody at the Pendleton Correctional Facility ("Pendleton"). The defendants are Superintendent Alan Finnan and Superintendent Keith Butts.

Mr. Peacher alleges in his amended complaint that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. He also alleges that defendant Mr. Finnan retaliated against him in violation of his First Amendment rights. He seeks compensatory damages and injunctive relief.

The defendants seek resolution of Mr. Peacher's claims through the entry of summary judgment. Mr. Peacher has opposed the motion for summary judgment and the defendants have replied.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant=s favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011). Evidentiary materials submitted by the parties which comply with Rule 56 and Local Rule 56.1 will be considered in addressing the defendants' motion for summary judgment. Materials not in compliance with those standards will be disregarded.

## III. Discussion

### A. Undisputed Facts

On the basis of the pleadings and the portions of the expanded record that comply with the requirements of Rule 56(c)(1), construed in a manner most favorable to Mr. Peacher as the non-moving party, the following facts are undisputed for purposes of the motion for summary judgment:[1]

Defendant Finnan was employed as the Superintendent of Pendleton from August 2009 until June 2011. Defendant Butts was the Superintendent of Pendleton beginning on June 6,

---

[1] The defendants' request (dkt 154) to exclude Mr. Peacher's expert report by Dr. Lawrence Mark submitted on June 6, 2014 (dkt. 150-17), is **granted** because the report does not satisfy the requirements of Rule 26(a)(2)(B) of the *Federal Rules of Civil Procedure* and the disclosure of the expert was not timely. In addition, the exhibits tendered in support of proposed facts that certain medications have specific side effects (dkt. 150-21, -23, -24, -26) are inadmissible because they are unauthenticated, hearsay, and not accompanied by expert testimony.

2011, and continued in that position after the date that this action was filed. As Superintendent, Mr. Finnan and Mr. Butts were each successively responsible for the operational oversight of the facility, including security, facility maintenance, industries, offender classification, re-entry programming, budget, human resources, and contract services for medical services, food services, and education.

Neither Mr. Finnan nor Mr. Butts has any medical training. In their capacity as Superintendent, Mr. Finnan and Mr. Butts both relied on the expertise of Correctional Medical Services/Corizon Healthcare Services (now called "Corizon") to provide medical care to the offenders at the prison. Pendleton is a Level 4 maximum security facility with very restrictive security measures. Mr. Peacher is housed in Departmental Administrative Segregation, a maximum security unit.

Mr. Peacher was transferred from Westville Correctional Facility to Pendleton on approximately December 30, 2010. Mr. Peacher had the use of an electric shaver at his previous facilities. Approximately one or two weeks after his transfer to Pendleton, Mr. Peacher received his property, but his electric shaver was not returned to him.

A property officer and custody staff member informed Mr. Peacher that his electric shaver was not permitted at the facility. Offenders are permitted to possess only the types and amounts of property listed in Pendleton's Offender Personal Property Policy, No. 02-01-101. Electric shavers are not included on the list of permitted property and, therefore, Pendleton offenders are prohibited from having electric shavers.

Electric shavers were previously permitted property, but they were banned in higher level security facilities approximately five years ago. Electric shavers were banned because allowing offenders to possess electric shavers posed a safety and security risk to Pendleton, Pendleton

staff, and offenders. In the past, offenders have been known to remove the electric motors from such devices and use them as tattoo guns and cell phone chargers – items that are prohibited to offenders housed at Pendleton. Offenders have also been known to adapt electronic devices to make hot plates which have been used to heat liquids such as water, urine, feces, and oils, which are then thrown on staff or other offenders, resulting in serious bodily injury to the victim. Mr. Peacher has been caught with contraband cell phones four or five times -- at every facility where he has been incarcerated, except New Castle Correctional Facility.

At the time the new offender property policy banning electric shavers in higher level facilities came into effect, many offenders had an electric shaver in their possession. Consequently, the facility adopted a "grandfather concept" as a way of phasing out electric shavers to comply with current policy. Offenders who had electric shavers at the time the ban went into effect could keep the electric shaver until the offender transferred to another facility or the shaver became defective or broken. At that time, the electric shaver would be confiscated or gate-released out of the facility.

Mr. Peacher asserts that on one occasion he spoke with Superintendent Butts on the range. Mr. Peacher told him about his condition and made some suggestions about how he could still use his electric shaver but not keep it in his possession. Mr. Peacher states that Superintendent Butts responded, "Those are reasonable [ideas]," and, "We're going to take care of you. We're not going to let you suffer like you (sic) been suffering." Superintendent Butts recalls no such conversation. Before Mr. Peacher filed this lawsuit, Mr. Butts was not aware that Mr. Peacher claimed he was in pain because of hair growing on his face.

Mr. Peacher submitted a request for healthcare form on January 11, 2011, requesting access to his electric shaver. At the time, Dr. Wolfe was the medical director at Pendleton,

employed by Corizon (then Correctional Medical Services) to provide medical care to the offenders and supervise the nursing staff. On the form, Dr. Wolfe responded, "this is a custody issue. Medical does not order shaving equipment or communication devices."

On January 28, 2011, Dr. Wolfe saw Mr. Peacher and examined Mr. Peacher's face. Mr. Peacher recounted his symptoms to Dr. Wolfe, which included face pain, watery eyes, and possibly twitching eyes. Mr. Peacher had no lesions, rashes, sores, lumps, or bumps to biopsy or scrape to do bacterial analysis or microscopic analysis. According to Dr. Wolfe, Mr. Peacher's symptoms were somewhat vague, and there were no specific lesions to test.

In the electronic medical record from that initial January 2011 appointment, Dr. Wolfe made a note that stated: "Ordered May use electric shavers from personal property." According to Dr. Wolfe, this was his recommendation rather than an order, because medical did not have control over Mr. Peacher's access to his devices. Dr. Wolfe made that recommendation for Mr. Peacher's comfort rather than for a medical reason. In Dr. Wolfe's medical opinion, it is not medically necessary for Mr. Peacher to use an electric shaver.

Dr. Wolfe treated Mr. Peacher's symptoms of persistent, chronic facial nerve pain. Every ninety (90) days, Mr. Peacher saw Dr. Wolfe for treatment of his facial condition in regularly scheduled chronic care visits. Dr. Wolfe named Mr. Peacher's irritation "unspecified idiopathic peripheral neuropathy."[2] Dr. Wolfe treated Mr. Peacher's facial pain with medications, including Tegretol, Mobic, Naproxen, Pamelor, and Depo-medrol, adjusting dosages and types in response to Mr. Peacher's complaints.[3] Dr. Wolfe treated Mr. Peacher's condition for nearly two years,

---

[2]Peripheral neuropathy is irritation or inflammation of the peripheral nerves. Numbness and tingling sensations are a symptom of peripheral neuropathy. Unspecified means nonspecific. Idiopathic means unknown cause.

[3]Pamelor is a medication often used in psychiatry, but it is also used to decrease irritation of the peripheral nerves. Tegretol was developed as a seizure prevention medication because it blocks

until he left employment with Corizon.

When Mr. Peacher shaves his face, with either an electric or disposable razor, he experiences no pain when the hair is removed. Mr. Peacher is in pain when his facial hair grows back. Mr. Peacher prefers an electric razor to a disposable razor because it cuts the hair near the surface of his skin. When Mr. Peacher shaves with a disposable razor, it cuts the hair below the surface and he gets ingrown hairs when the hair grows back.

The medications work to relieve Mr. Peacher's facial pain for approximately two or three hours. Mr. Peacher complains that his prescribed pain medication does not work long enough and that he has built up a tolerance to it. When Mr. Peacher received a steroid injection, he felt no pain for 10 or 11 days.

On March 18, 2011, the Indiana Court of Appeals, in a case unrelated to this one and in which neither Mr. Finnan nor Mr. Butts were parties, ordered Pendleton to permit Mr. Peacher "reasonable access to his word processor for use in these proceedings" because Mr. Peacher's handwriting was illegible. On or about March 21st or 22nd, 2011, Mr. Finnan told Mr. Peacher that he was not going to get his word processor or his electric shaver and that he would make sure that his word processor was broken.[4] Mr. Peacher's word processor was subsequently reported as being damaged and he was denied access to it as a result.

---

transmissions from one nerve cell to the next. It also has a very good use in pain management because it blocks some of those pain sensations from one nerve to the next. Mobic and Naproxyn are both also non-steroidal anti-inflammatory medications. While chemically different, both Mobic and Naproxyn similarly reduce inflammation. Depo-medrol is a steroid injection.

[4]This fact is disputed because Mr. Finnan does not recall having any conversation with Mr. Peacher regarding a word processor and his electric shaver. Mr. Finnan does not recall speaking to Mr. Peacher at any time.

### B. Analysis

*Eighth Amendment Deliberate Indifference Claims*

At all times relevant to Mr. Peachers's claims, he was a convicted offender. Accordingly, his treatment and the conditions of his confinement are evaluated under standards established by the Eighth Amendment's proscription against the imposition of cruel and unusual punishment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.").

Pursuant to the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, meaning, they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish a medical claim that a prison official has violated the Eighth Amendment, a plaintiff must demonstrate two elements: (1) an objectively serious medical condition, and (2) deliberate indifference by the prison official to that condition. *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

As to the first element, "[a]n objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer,* 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotation omitted). For purposes of this motion for summary judgment, the Court finds that Mr. Peacher's skin problems constituted a serious medical need.

"To show deliberate indifference, [Mr. Peacher] must demonstrate that the defendant was actually aware of a serious medical need but then was deliberately indifferent to it." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). He must show that "the defendant officials had a

sufficiently culpable state of mind-that their acts or omissions [were] sufficiently harmful to evidence deliberate indifference to his serious medical needs." *Pittman,* 746 F.3d at 775. (internal quotation omitted).

It is well-settled that non-medical prison staff are entitled to rely on the opinions of medical professionals. *McGee v. Adams,* 721 F.3d 474, 483 (7th Cir. 2013); *Arnett v. Webster,* 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants…can rely on the expertise of medical personnel."). This is because inmate safety and health is promoted when non-medical staff are justified in believing that when a prisoner is treated by medical experts, he is "in capable hands." *Arnett,* 658 F.3d at 755. Non-medical administrators can be liable for deliberate indifference only if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Id.* (internal quotation omitted). Here, there is no evidence that the medical staff at Pendleton ignored or failed to treat Mr. Peacher's skin problems.

An inmate is not entitled to the best possible care or to receive a particular treatment of his choice. *See Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997). It is clear from the entire record that Mr. Peacher disagreed with some of the treatment decisions to prescribe medications, however, that does not prove his claim. *See Ciarpaglini v. Saini,* 352 F.3d 328, 331 (7th Cir. 2003) (mere disagreement with medical professionals about one's needs does not state a claim for deliberate indifference). It is Dr. Wolfe's opinion that it is not medically necessary for Mr. Peacher to use an electric shaver. "[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so." *Berry v. Peterman,* 604 F.3d 435, 440 (7th Cir. 2010).

Even accepting for purposes of this motion Mr. Peacher's assertion that he told the defendants that he needed an electric razor to treat his facial pain, he has not demonstrated that either Superintendent was deliberately indifferent to his medical needs. Neither Mr. Butts nor Mr. Finnan prevented Mr. Peacher from accessing or receiving treatment for his facial pain. Dr. Wolfe treated Mr. Peacher on a regular basis and his course of treatment provided some relief. Dr. Wolfe used his professional judgment when he prescribed different medication types and dosages in response to Mr. Peacher's complaints. Mr. Finnan and Mr. Butts had no reason to believe that an electric razor was medically necessary or that Mr. Peacher's complaints were being ignored. As noted, the Superintendents properly deferred to the opinions of and treatment provided by medical staff.

Under these circumstances, no reasonable jury could find that Superintendents Finnan and Butts acted with deliberate indifference. The defendants are entitled to summary judgment as to the Eighth Amendment claims of deliberate indifference.[5]

*Retaliation Claim against Superintendent Finnan*

Mr. Peacher also brings a claim of retaliation against defendant Mr. Finnan. This claim is based on statements made to Mr. Peacher by Mr. Finnan on or about March 20, 2011. Superintendent Finnan allegedly told Mr. Peacher that he would never obtain his word processor and his electric clippers because they would be broken. Mr. Peacher argues that Superintendent Finnan's words were in response to an Indiana Court of Appeals order dated March 18, 2011, ordering Pendleton to provide Mr. Peacher with access to a word processor during that case's proceedings because his filings were not legible. Mr. Peacher contends that he was denied an

---

[5] The Court need not address the defendants' qualified immunity defense because no constitutional violation has been found. *Mucha v. Village of Oak Brook,* 650 F.3d 1053, 1057 (7th Cir. 2011) (when there is no constitutional violation, defendants "do not require the additional protection of qualified immunity.").

electric razor based on retaliation for the court order.

To prevail on a retaliation claim, Mr. Peacher must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation omitted). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Id.* (internal quotation omitted).

As pointed out by Mr. Finnan, the timing of the March 2011 conversation, even assuming for purposes of this motion for summary judgment that it occurred, defeats any claim of retaliation. Mr. Peacher was denied his electric shaver when he was transferred to Pendleton on or about December 30, 2010. He was informed of the deprivation in January of 2011. For purposes of a retaliation claim, "[a] motivating factor is a factor that weighs in the defendant's decision to take the action complained of-in other words, it is a consideration present to his mind that favors, that pushes him toward, the action." *Hasan v. U.S. Dept. of Labor,* 400 F.3d 1001, 1006 (7th Cir. 2005). The ruling in March of 2011 in an unrelated civil case directing the prison to provide Mr. Peacher with access to his word processor could not have been a motivating factor in the denial of his electric shaver several months *earlier.* His electric shaver was denied because of legitimate penological concerns and policies in the maximum security prison. Mr. Peacher cannot present any admissible evidence showing that the decision to not allow him to retain his electric shaver was motivated by the March 18, 2011, court order because such evidence could not exist. Mr. Finnan is entitled to summary judgment with respect to Mr. Peacher's claim of retaliation.

## IV. Conclusion

Mr. Peacher has not identified a genuine issue of material fact as to his claims that the defendants were deliberately indifferent to his serious medical needs or that defendant Mr. Finnan retaliated against him. Therefore, the defendants' second motion for summary judgment [dkt. 144] must be **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 9/30/2014

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Electronically registered counsel